UNITED STATES of America

v.

**Richard L. REICHERTER, DMD**
**Leslie Pearlman, DMD**

**No. CRIM.A. 02–277.**

United States District Court,
E.D. Pennsylvania.

May 14, 2004.

Catherine Votaw, Frank R. Costello, Jr., Frank R. Costello, United States Attorney's Office, Philadelphia, PA, for Plaintiff.

Creed C. Black, Jr., Philadelphia, PA, for Dr. Richard Reicherter.

Marc S. Raspanti, David M. Laigaie, Michael A. Morse, Miller, Alfano & Raspanti, P.C., Philadelphia, PA, for Dr. Leslie Pearlman.

### MEMORANDUM AND ORDER

MCLAUGHLIN, District Judge.

The defendant dentists have been charged with twenty-three counts of mail fraud and twenty-three counts of health care fraud. The indictment charges that over a ten year period the defendants billed insurers for twenty-three periodontal procedures—scaling and root planning, or gingival curettage—that they did not perform. All charges are from claims for eighteen patients—six patients of Dr. Reicherter and twelve patients of Dr. Pearlman. Both defendants are charged in each count.

The defendants have moved to exclude the expert testimony of Dr. Scott Garrison, a periodontist, pursuant to F.R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125

L.Ed.2d 469 (1993). The Court held a hearing on July 30, 2003, at which Dr. Garrison testified. The parties have filed multiple and extensive briefs. The Court will grant the motion in part and deny the motion in part.

The government has produced to the defendants several reports by Dr. Garrison. The most recent report is dated January 8, 2001, and is described by Dr. Garrison as a "draft" report of his findings. Dr. Garrison's introduction to the report states:

> After reviewing the cases of 57 patients from Drs. Reicherter and Pearlman, I have found evidence of fraud which falls into three broad dental treatment categories. The first was that of periodontal treatment which included the procedures of scaling and root planing, curettage and periodontal charting. The second was restorative treatment primarily that of resin bonded restorations and the third was that of occlusal adjustments.

Report, p. 1.

The indictment does not charge the defendants with any fraud relating to the second and third dental treatment categories discussed by Dr. Garrison: restorative treatment and occlusal adjustments. The government at one point had moved to admit the evidence of these treatments pursuant to Federal Rule of Evidence 404(b). The government has withdrawn that request and does not propose to elicit any testimony from Dr. Garrison concerning these procedures.

As to the periodontal treatments that are the subject of the report, Dr. Garrison summarized his findings as follows:

> In summary, the evidence for false insurance claims for periodontal treatment revolves around the following:
>
> 1. Treatment not scheduled ahead of time only performed during the patients normal checkup exam
> 2. Scaling and root planing was performed on a regular basis not as a defined treatment
> 3. No follow up evaluation of the response to treatment was ever performed
> 4. Patients were not informed that they had any periodontal disease
> 5. Patients not informed that scaling and root planing was performed
> 6. Patients not informed that curettage was performed
> 7. Patients were not billed for any of the work
> 8. Average amount of time patients reported for four quadrants of scaling and root planing was 10–30 minutes
> 9. There was not even one instance where scaling and root planing treatment was performed sequentially over 2–4 visits
> 10. Periodontal chartings not updated and in many circumstances fabricated, an incorrect number teeth were present on the chart and the patients reported never having the charting performed
> 11. Logistics of performing treatment/periodontal charting not feasible
> 12. Patients reporting that nothing other than a cleaning was performed
> 13. *No* anesthesia was given to *any* patient

Report, p. 4.

The report listed the fifty-seven patients and Dr. Garrison's conclusions with respect to each patient and with respect to each of the three dental treatment categories described above. The government has stated that it does not intend to elicit any testimony from Dr. Garrison about thirteen of the fifty-seven patients who are children for whom the defendants submit-

ted insurance claims for resin restorations and occlusal adjustments. At issue are Dr. Garrison's opinions with respect to forty-four patients: twelve are patients of Dr. Reicherter and thirty-two are patients of Dr. Pearlman.

In addition to his opinions that the defendants did not perform the procedures that are the subject of the indictment, the government wants to have Dr. Garrison testify about the relevant dental and periodontal terms, the relevant dental and periodontal procedures, and the diagnosis and treatment of periodontal disease.

■ As a threshold matter, the government has stated that it will not ask Dr. Garrison whether, in his opinion, the billings of the defendants were fraudulent. The Court would have prohibited such testimony in any event under F.R. Evid. 704(b). For the same reason, the Court holds that Dr. Garrison may not give any opinion that the defendants "fabricated" the dental charts or any other documents, or any similar opinion. This terminology was dispersed throughout the witness's written opinion and his oral testimony. It is improper expert testimony for a periodontist.

■ The core of Dr. Garrison's testimony is that the defendants did not perform the procedures for which they billed. It is that testimony that is the focus of the defendants' motions. The defendants claim that Dr. Garrison's methodology is not reliable, and should be excluded under F.R. Evid. 702 [1] and *Daubert.* Within the Third Circuit, the criteria for determining the reliability of expert testimony include: (1) the existence of testable hypotheses;

(2) whether the methodology has been subjected to peer review; (3) rates of error; (4) existence and maintenance of standards to control the techniques and operations; (5) whether the methodology is generally accepted; (6) the relationship of the expert's technique to methods which have been established to be reliable; (7) qualifications of the expert; and (8) any non-judicial use as to which the methodology has been put. *Elcock v. Kmart Corp.,* 233 F.3d 734, 745–46 (3d Cir.2000).

Dr. Garrison described his methodology in his report and in his oral testimony. He interviewed and conducted a clinical examination of the patients, reviewed billing documents submitted to the insurance companies, and examined some of the defendants' patient files. From these sources of data, Dr. Garrison concluded that the procedures were not performed. The various factors that led him to this conclusion were summarized in his report and are listed above. *See* p. 3–4 above. The weight given the various factors varied from patient to patient, depending on the individual case. The witness conceded that this was a "subjective process" and that another expert could come to different conclusions. He did not reduce his methodology to writing. Transcript of Hearing, at 341–348, 360 ("Tr.").

Dr. Garrison essentially admitted that his methodology did not meet the *Elcock* criteria. He agreed that his method did not consist of any testable hypotheses, and had not undergone any peer review. He also admitted that there was no testing for errors, and that he gave no consideration to any margin of error in his conclusions.

---

1. Rule 702 provides:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

He conceded that his methodology has no general acceptance within the scientific community, and he does not know of any non-judicial uses to which such a methodology has ever been put. Tr., at 367–373.

■ The defendants also argue that the witness's opinions are unreliable because, in forming his opinions, he relied to a large extent on his interviews with the patients. The Court agrees for several reasons. To the extent Dr. Garrison concluded that a certain procedure was not done because the patient said it was not done, expert testimony is not necessary. The jury can evaluate the credibility of the patient as well as or better than Dr. Garrison.

Second, relying on such interviews of patients is not an acceptable basis of opinion testimony under F.R. Evid. 703. These interviews are not "of the type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Periodontists do not generally make decisions on whether other dentists perform certain procedures. Nor do periodontists quiz their patients on the types of information that Dr. Garrison elicited from the defendants' patients. He testified that the questions he asked the defendants' patients were not from his regular patient questionnaire. Tr., at 189; 356–358.

■ Third, the reliability of the interviews is highly suspect. They were describing visits to a dentist up to 10 years in the past. FBI agents and the prosecutor were present at the time of the interviews. These witnesses had already given multiple statements to the insurance companies and/or law enforcement. Dr. Garrison took very few notes on what the patients said.[2] Tr., at 391. The defendants questioned Dr. Garrison about medical literature, discussing the deficiencies in patient recollection of medical procedures. The witness was not aware of such literature.

For all of these reasons, the Court concludes that Dr. Garrison may not testify in the form proposed by the government as to his opinions that the defendants did not perform the procedures at issue. He may testify, however, as to other facts and opinions.

■ Dr. Garrison is a qualified periodontist. As such, he may testify about the relevant dental and periodontal terms, the relevant dental and periodontal procedures, and the diagnosis and treatment of periodontal disease.

Dr. Garrison also may testify to his observations and conclusions drawn from examining the patients.[3] For example, Dr. Garrison testified that with respect to some patients, his opinion that a certain procedure was not performed was based on his clinical evaluation of the patient's gums. This type of testimony would derive from his expertise as a periodontist and would not be infected by his interviews with the patients.[4]

---

2. Even if Dr. Garrison were permitted to give his opinion on the basis of the patient interviews, he would not be permitted to tell the jury what the patients told him. *See* Rule 703: "Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." The Court could not make that determination here.

3. The defendants have also moved under F.R. Evid. 403 to exclude testimony about patients who do not form the basis for any of the forty-six counts of the indictment. The Court will decide that motion in a separate memorandum. The Court only decides here whether under F.R. Evid. 702 and *Daubert,* Dr. Garrison's testimony should be limited.

4. Although the Court concludes that Dr. Garrison may testify about his clinical examination of the patients, the witness's expert report does not give many specific details about

■ The government may also elicit testimony from Dr. Garrison related to testimony from the patients themselves. For example, he has said that some of the procedures were not done because the patients said then they only spent fifteen or twenty minutes with the doctors and the procedures could not be done within that time frame. Dr. Garrison may testify about the length of time it takes to do the procedures. He may also testify that certain patient charts do not reflect the actual teeth in the patient's mouth. He may talk about when anesthesia is used and when it is not used.

An appropriate Order follows.

## ORDER

AND NOW, this 14th day of May, 2004, upon consideration of the defendants' motion to exclude the testimony of Dr. Scott Garrison, the government's opposition thereto, after a hearing held on July 30, 2003, and after a review of prior post-hearing submission of the parties, it is hereby ORDERED and DECREED that said motion is granted in part and denied in part as stated in a memorandum of today's date.

any opinions derived from such examinations. Nor did the government elicit such testimony from Dr. Garrison at the *Daubert* hearing. It may be that the defendants do not at this point have proper notice of these opinions. The Court will meet with counsel to discuss these and other issues presented by the Court's decision.